The appellant, William W. Gillespie, was convicted of one count of sodomy in the first degree and two counts of sexual abuse in the first degree. §§ 13A-6-63 and 13A-6-66, Code of Alabama 1975. After a jury found him guilty, the trial court sentenced the appellant to 10 years' imprisonment for the count of sodomy in the first degree and to 5 years' imprisonment for each count of sexual abuse in the first degree. The trial court ordered that the sentences for sexual abuse in the first degree were to be served concurrently with one another and were to be served consecutively with the sentence for sodomy in the first degree. The trial court also ordered that the appellant pay court costs, $250 to the victims' compensation fund, and $2,142.40 in restitution.
The appellant represented himself during the trial of this case. On February 24, 1993, the trial court held a pretrial status conference, during which the following colloquy took place:
 "THE COURT: Mr. Gillespie has informed the court by letter and his first appearance in court that he desired to represent himself and that he waived his right to a trial by jury.
"THE [APPELLANT]: Yes, sir.
"THE COURT: He sent a letter to the court on that.
". . . .
 "THE COURT: Wait a minute. [After] taking into consideration all of his income, the court finds Mr. Gillespie is not indigent.
"THE [APPELLANT]: No, sir, I am not.
"THE COURT: You are not indigent?
"THE [APPELLANT]: No, sir.
"THE COURT: All right.
"THE [APPELLANT]: No, sir. Absolutely not.
 "THE COURT: Which means that the court is not obligated under the rules to appoint a lawyer to Mr. Gillespie. So Mr. Gillespie is going to represent himself pro se. However, out of an abundance of caution — the court has two lawyers assigned to this court on contract to do criminal defense work. They are experienced lawyers and have done excellent jobs and are former district attorneys. The court has called Brenda Watson, who is one of those lawyers, and the court is going to appoint Miss Watson for the limited purpose, out of an abundance of caution, to sit at counsel table and assist Mr. Gillespie whenever he desires her assistance, but he will try his case. Okay. Do you understand that?
"MS. WATSON: Yes, sir. . . .
 "THE COURT: . . . Miss Watson, what I would like for you to really do, whether Mr. Gillespie wants you to do it or not, and I guess he will handle all of the examination and cross-examination, but I would like for you to specifically educate Mr. Gillespie for the morning of trial. Take him to the library and show him where the *Page 1286 
jury questionnaires are so he can go through those. And then, because these three cases are consolidated, make sure he understands how the strikes will go and show him how the jury will be impaneled. After that, if he doesn't want your assistance in any other fashion, I will ask you to sit at the table. If I make the decision later that you can leave, I will let you know.
". . . .
 "THE COURT: . . . I will see you all next Wednesday at 8:30. Be prepared and ready for trial at that time. Miss Watson, show him all of that stuff."
On March 3, 1993, the appellant's cases were called for trial and the following discussion occurred:
"THE COURT: State v. Gillespie. State ready?
"MR. TURNER [prosecutor]: Yes, your honor.
"THE COURT: Defense ready?
"THE [APPELLANT]: Yes, sir.
 "THE COURT: Let's get some things straight. All right. The previous record from this court shows Mr. Gillespie has elected to represent himself. He has stated to the court that he is not indigent. The court has accepted that. He's elected to represent himself.
 Okay. The court has advised Mr. Gillespie to get familiar with the rules of evidence and the procedure of the court in presenting his case. Out of an abundance of caution — Miss Brenda Watson is on contract with this court to handle criminal defense matters. Since Mr. Gillespie is not indigent, the court is not going to take money from the indigent defense fund to appoint [Ms.] Watson as an attorney or any other attorney to represent Mr. Gillespie in that the state would be billed. The court has instructed [Ms.] Watson to assist or give Mr. Gillespie guidance in striking the jury, although he will make the decision who is to be struck. She will give him guidance on the procedures of the court. At some particular time, the court will decide whether [Ms.] Watson will remain throughout his trial or be relieved to go back and do other duties since Mr. Gillespie is not indigent and has elected to represent himself. . . . Okay. Are there any matters we have to take up before we get this venire up here?
"MR. LUSK [prosecutor]: Yes, sir.
"THE COURT: What?
 "MR. LUSK: With regard to what the court was just discussing about Mr. Gillespie's election to waive his right to counsel, if you will notice in that case — I don't recall the name of the case, but it's in headnote 2. The law requires that the court, on the record, explain to Mr. Gillespie, the perils of self-representation and the possible punishment that he can receive.
 "THE COURT: I have done that but I will do it again, based on [Hill v. State].
"MR. LUSK: Yes, sir.
 "THE COURT: Mr. Gillespie, how old are you, please, sir?
"THE [APPELLANT]: 57.
"THE COURT: How far did you go in school?
"THE [APPELLANT]: Sixth grade.
"THE COURT: You retired from the military?
"THE [APPELLANT]: Yes, sir.
 "THE COURT: What kind of work did you do in the Air Force?
 "THE [APPELLANT]: I was a [missile] inspector and rescue.
"THE COURT: Are you able to read and write?
"THE [APPELLANT]: Yes.
 "THE COURT: Have you done any additional work other than the Air Force?
 "THE [APPELLANT]: Yes, sir. I work for — I was in the wholesale automobile business, and I am a carpenter and cabinet maker.
 "THE COURT: And you are retired from active duty, as I understand?
"THE [APPELLANT]: Yes.
 "THE COURT: And although you had a sixth grade education, you performed well *Page 1287 
enough to stay in the Air Force on active duty for 20 years?
 "THE [APPELLANT]: That was my formal education when I went in the Air Force. I have since gotten an equivalent of two years of college.
 "THE COURT: . . . I have asked you whether or not you were indigent. What was your answer?
"THE [APPELLANT]: No, sir.
"THE COURT: You are not indigent?
"THE [APPELLANT]: No, sir.
 "THE COURT: Do you understand that in representing yourself that you are responsible for knowing the rules of evidence and presenting your case?
"THE [APPELLANT]: Yes, sir.
 "THE COURT: And do you understand that if you are convicted in these cases, that — this is a sexual abuse case in the first. . . .
". . .
 "THE COURT: It's a class C felony, and I would be authorized to sentence you from one year and a day up to ten years in the penitentiary. Do you understand that?
"THE [APPELLANT]: I do, sir.
 "THE COURT: And that was in case number [CC-] 92-2031. In case number [CC-92-2032], you're charged with sexual abuse in the first degree, and I would be authorized to sentence you to not less than one year and a day up to ten years in the penitentiary; plus up to $50 — I must order you to pay to the Alabama Crime Victims' Compensation Fund between $50 up to $10,000; plus I can impose a fine not exceeding $5,000. Do you understand that?
"THE [APPELLANT]: I do, sir.
 "THE COURT: In case number [CC-]922030, sodomy in the first degree, is a Class A felony. If you were convicted, I would be authorized to sentence you to not less than ten years up to ninety-nine years or life; plus a fine not exceeding $20,000. Do you understand that?
"THE [APPELLANT]: I do, sir.
 "THE COURT: I must order you to pay an amount between $50 up to $10,000 to the Alabama Victims' Crime Compensation Fund, if you are convicted. Do you understand that?
"THE [APPELLANT]: I do, sir.
". . . .
 "THE COURT: Do you waive — well, since you are not indigent, do you still elect and waive your right to have a lawyer appointed and you want to represent yourself?
 "THE [APPELLANT]: I elect to represent myself; yes, sir."
Later during this proceeding, the trial court discussed evidentiary matters with the parties. The appellant requested to hear audiotapes of grand jury testimony given by the victims in this case. The court ordered the State to provide the appellant with the audiotapes and stated that the court would reconvene after the appellant had had the opportunity to hear the audiotapes. When the court reconvened, the appellant requested a three-day continuance so that he could seek "professional counsel." The trial court granted the appellant a continuance of two and one-half weeks and informed the appellant that his retained attorney should contact the district attorney's office so that the State could provide the appellant's attorney with its entire file on the case.
On March 22, 1993, the appellant appeared for docket call without an attorney and again informed the trial court that he wanted to represent himself. The appellant was told that his case would not be tried until March 24. The appellant stated that he was ready for trial and indicated that he was disturbed that the trial would not be held until two days later.
On March 24, 1993, the appellant's case was tried. Ms. Watson assisted the appellant in striking the jury, but was then excused by the trial court and the appellant represented himself. The appellant is represented by an attorney in this appeal.
 I
The appellant argues that the record does not reflect that he knowingly and intelligently waived his right to counsel at trial, and that, therefore, his convictions violate the Sixth
and Fourteenth Amendments to the *Page 1288 
United States Constitution and Art. I, § 6, of the Alabama Constitution.
 "An accused has a constitutional right to represent himself where his decision to proceed without counsel is voluntarily and intelligently made. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In determining whether an accused's waiver of counsel was in fact voluntarily and intelligently made, some courts 'require that a trial court expressly admonish a defendant of the dangers and pitfalls of self-representation.' Teske v. State, 507 So.2d 569, 571 (Ala.Crim.App. 1987).
 "Alabama, however, does not subscribe to this view. Instead, our courts follow the modern trend which 'require[s] only that it appear from the record as a whole that a defendant's waiver of counsel and decision to represent himself were knowing and intelligent.' Teske, 507 So.2d at 571. Under this approach, 'the focus of the inquiry is not on the information revealed by the court but on the knowledge of the accused, as shown by the circumstances surrounding the waiver.' Id. (Emphasis added [in McLeod]). Although recognizing that 'express, on-the-record advice of the dangers and risks of self-representation is . . . highly desirable,' id. at n. 1, Teske
makes it clear that as long as a knowing and intelligent waiver is apparent from the record, it need not emerge from a colloquy in which the defendant is advised by the trial judge of the dangers and disadvantages of self-representation. See also 2 W. LaFave and J. Israel, Criminal Procedure § 11.3(b) at pp. 30-33, § 11.5(c) at pp. 44-47 (1984)."
McLeod v. State, 581 So.2d 1144, 1148 (Ala.Crim.App. 1990).
In cases in which the accused's waiver of the right to be represented by counsel is clear and unequivocal, such as the waiver in this case, the burden is upon the appellant to establish by a preponderance of the evidence that the waiver was not knowing and intelligent. Tomlin v. State,601 So.2d 124, 128 (Ala. 1991); Westmoreland v. City ofHartselle, 500 So.2d 1327, 1328 (Ala.Crim.App. 1986),citing, Faretta v. California, 422 U.S. 806,95 S.Ct. 2525, 45 L.Ed.2d 562.
The record clearly reflects that the appellant's waiver of his right to counsel was knowing and intelligent. The record establishes that the trial court informed the appellant of the seriousness of the offenses with which he was charged and of the range of sentences that the trial court could impose if the appellant was found guilty of the offenses. The appellant stated that he understood he would have to follow the rules of evidence and courtroom procedures in representing himself.
The trial court proceeded cautiously by providing the appellant with the guidance of an attorney to assist the appellant with the rules of evidence and with procedural matters. The trial court even provided the appellant with a continuance of two and one-half weeks, although he requested only three days, so that the appellant could retain counsel and counsel could review the appellant's file. Nevertheless, on the date set for trial after the continuance, the appellant stated that he still wanted to represent himself and that he wanted to try his case that day. The appellant was familiar with the criminal justice system and knew the benefits of having an attorney represent him; he had been tried and convicted of an offense on a previous occasion, and this Court reversed that conviction on appeal. See Gillespie v. State,549 So.2d 640 (Ala.Crim.App. 1989).
The appellant has failed to establish by a preponderance of the evidence that his waiver of his right to counsel was not knowingly and intelligently made. This Court holds that, under the circumstances of this case, the trial court did all that was necessary to determine that the appellant's waiver was knowingly and intelligently made. See McLeod, 581 So.2d at 1149.
 II
The appellant argues that the trial court erred in not ruling on his motion for a new trial and thereby allowing it to be denied by operation of law because, he says, newly discovered evidence presented with that motion would entitle him to a new trial. In an affidavit supporting the appellant's motion for a new trial, Barbara Thompson, the appellant's neighbor, stated that C.W., the appellant's *Page 1289 
granddaughter and a child victim in this case, told her that she was upset that the appellant had not taken her to Florida as he had C.W.'s brothers. Thompson further stated in the affidavit that C.W. told her that if the appellant did not take her to Florida that she would do "grown up things" with boys" and blame the appellant for the acts.
The State correctly asserts that in order to establish the necessity for a new trial based on newly discovered evidence, the appellant must prove: (1) that the evidence was discovered after the trial; (2) that the evidence could not have been discovered prior to trial by due diligence on the part of the movant; (3) that the evidence is material to the issue of the appellant's guilt; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would probably change the outcome if a new trial was granted. Exparte Heaton, 542 So.2d 931 (Ala. 1989); Landreth v.State, 600 So.2d 440 (Ala.Crim.App. 1992). The trial court is entitled to great deference in determining whether newly discovered evidence warrants a new trial and that decision will not be reversed absent a clear abuse of discretion. Moran v. State, [Ms. CR-91-1925, September 30, 1993], 1993 WL 381489 (Ala.Crim.App. 1993).
In this case, it is clear that this newly discovered evidence, even if true, would serve only to impeach the credibility of C.W. Moreover, it is extremely unlikely that this evidence would affect the outcome of the appellant's case. Testimony from other witnesses, including C.W.'s brother, a social worker, and a physician, corroborated the testimony of C.W. and, thus, strengthened her credibility. It is unlikely that this newly discovered evidence would discredit C.W. to such an extent that the outcome of the case would be altered. Additionally, the appellant was also tried for and convicted of sexual abuse involving another child victim, R.W. This newly discovered evidence undoubtedly would not warrant a new trial as to R.W. because Thomas's affidavit did not relate to R.W.
We cannot hold that the trial judge abused his discretion in denying the appellant a new trial based on alleged newly discovered evidence because the appellant has failed to establish that the new evidence is anything more than impeachment evidence and that the outcome of his trial would be different if the jury had been exposed to this evidence.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.