The appellant, Taft Willingham, was convicted of kidnapping in the second degree, a violation of § 13A-6-44, Ala. Code 1975. He was sentenced to serve 20 years in the penitentiary and was fined $10,000. He raises two issues on appeal.
 I
The appellant was indicted for kidnapping in the first degree. The jury was instructed on kidnapping in the first degree and the lesser included offenses of kidnapping in the second degree, unlawful imprisonment in the first, and unlawful imprisonment in the second degree. The appellant contends on appeal that the trial court erred in refusing to charge the jury on menacing. The appellant cites Bang v. State,620 So.2d 106 (Ala.Cr.App. 1993), which states that menacing is a lesser included offense of kidnapping when the evidence on the issue of abduction is in conflict. However, there was no rational basis in this case to instruct the jury on menacing.
Section 13A-6-23(a), Ala. Code 1975, defines "menacing" as follows:
 "(a) A person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury." *Page 146 
Section 13A-6-44, Ala. Code 1975, defines kidnapping in the second degree as follows: "(a) A person commits the crime of kidnapping in the second degree if he abducts another person."
Section 13A-6-40(2), Ala. Code 1975, defines "abduct" as follows:
 "To restrain a person with intent to prevent his liberation by either:
 "a. Secreting or holding him in a place where he is not likely to be found, or
 "b. Using or threatening to use deadly physical force."
James White testified that he and a couple of other people were standing on the street talking with the victim, who was 15 years old at the time of the offense, when the appellant's truck passed them and went around the block. He said that the appellant came back, pulled up next to them, and got out. The appellant walked over to the victim and whispered in her ear. According to White, the situation changed "instantaneously". R. 187. The victim became visibly upset. The appellant grabbed the victim twice, but she broke away each time. After she broke away the second time, she started to run. The appellant pulled a gun out of his back pocket, pointed it at the victim, and said "If you run I'll shoot you." R. 189-90. The victim stopped and the appellant grabbed her from behind, still pointing the gun at her. The victim asked White to "please help [her]" to which the appellant responded, "Yeah, [White], go ahead and help her." R. 191. White answered, "I'm sorry, there is nothing I can do." R. 191. White continued,
 "[The appellant] began to pull her to the truck and he said 'Yeah, go ahead and try to be a hero if you want to.' As he pulled her and forced her into the truck, she was still resisting and he forced her into the truck and he locked the door and he slammed it shut and as he was going around to the other side he fired a shot in the air. As he got in the [truck] and was pulling off, he began to fire a couple of more shots."
R. 191-92. White told the victim's mother what had happened and she sent the police to the appellant's house.
The victim's testimony was almost identical to White's. However, she also testified that she was not dating the appellant at the time of the offense. She said that the appellant had accused her of stealing jewelry from him while at a party at his house. She stated that she was unable to break away from the appellant's grasp because he had "the gun at [her] side . . . [so she] just had to go. . . . [and] he put [her] in the truck." R. 219-20. She testified that the appellant drove past Pine's Park and commented, "I ought to take you out behind one of these trees and just beat you up . . . and he just kept threatening [her]." R. 221. She stated that she did not know where the appellant was taking her. They eventually stopped at the appellant's house. Once inside the appellant's house the appellant placed the gun next to him on the sofa and put a pornographic movie in the VCR which he proceeded to watch. The victim testified that the appellant raped her and forced her to perform oral sex on him.
Officer Alex Taylor of the City of North Courtland Police Department testified that he and an Officer Young arrived at the appellant's house almost at the same time. He stated that Young may have been ahead of him. Taylor testified that the victim was not "distraught or upset" or crying when he arrived. R. 261.
Detective Sergeant John Richard Boyd, with the Decatur Police Department, testified that he advised the appellant of his constitutional rights and spoke with the appellant before he was arrested. Boyd compiled a written report reflecting the appellant's statements. The appellant told Boyd that, "he would admit to using some degree of force in taking [the victim] and forcibly placing her in his vehicle . . . but that he did not use a firearm to do that." R. 291. Boyd said that the appellant stated that
 " 'individuals might have perceived him as being armed with a gun.' He elaborated by stating that he had a cap gun. He stated that he used it to quote, 'scare the victim and for his personal protection.' . . . He stated that he did hold the cap gun on the alleged victim . . . for some time. He stated that on the way back to his *Page 147 
home he took the weapon off of her and, to quote him, 'talked real nice to her.' He said they had a rather nice ride back to Courtland."
R. 301.
Markess Gholston, a relative of the appellant, testified for the defense. He stated that he saw the victim voluntarily get into the appellant's truck.
Rosa Bowman, that appellant's girlfriend, testified that she was at the appellant's house on the night of the incident. She stated that she was asleep in the appellant's bedroom when he came in and woke her up and telephoned his nephew and told him that a girl was there to see him. She said that she did not see the victim.
Geneva Gross Holmes Deloney, the appellant's older sister, testified that the victim had been to her house on three occasions to see her son, the appellant's nephew.
The appellant testified that the victim voluntarily got into his truck and went with him because she wanted to see his nephew. He stated that the testimony of White and the victim was not true. He denied making the statements presented by Boyd. However, he also stated that he made the statements but they were made in order to tell Boyd what he wanted to hear. R. 390.
In this case the jury heard testimony that the appellant abducted the victim and testimony that the victim voluntarily went with the appellant. An instruction on menacing is not supported by the testimony that the appellant "t[ook the victim] and forcibly plac[ed] her in his vehicle" while threatening to shoot her. The jury could have believed the testimony stating that the victim voluntarily went with the appellant. In that case the appellant would be guilty of no crime. Neither scenario supports giving an instruction on menacing. "Only where there is a rational theory from the evidence to support a verdict on the lesser offense may the court charge the jury with respect to the lesser included offense. § 13A-1-9(b), Code of Alabama 1975." Murphy v. State,641 So.2d 1256 (Ala.Cr.App. 1993). Under the facts and circumstances of this case, the appellant was either guilty of second degree kidnapping or innocent. Consequently, he was not entitled to a jury instruction on menacing as a lesser included offense of kidnapping. We find no error with trial court's refusal to charge the appellant on menacing.
 II
The appellant contends that the trial court committed reversible error by denying his motion for a new trial after hearing the evidence presented at the hearing on the motion. He alleged that the State intentionally withheld the exculpatory testimony of Officer Fred Young, assistant chief of police for the Courtland Police Department and that trial counsel was ineffective for not discovering Young's testimony. At the hearing, Young testified that a subpoena had been issued ordering him to appear at the appellant's trial but that he was out of town when it was issued and did not return until after the trial. Supp.R. 18. He testified that he had been dispatched to the appellant's home to investigate a possible kidnapping. He stated that the victim came out of the appellant's bedroom fully dressed. He said that "she appeared to be all right up until the time I said she had to go to Decatur P.D." Supp.R. 13. He said that he drove her to meet the Decatur police. He said that he asked her if she had been raped or kidnapped and that the victim told him that she had not been. Supp.R. 12.
The record does not support the appellant's contentions that the State intentionally withheld exculpatory evidence and that trial counsel was ineffective for not discovering Young's testimony. The evidence was that the State subpoenaed Young but that Young failed to appear. The prosecutors did not speak with Young before trial. Supp.R. 43. Defense counsel acknowledged that he was "not accusing [the prosecutor] of withholding evidence because [the prosecution] testified they have never talked to [Young]." Supp.R. 43. There is nothing in the record to suggest that the State knew the content of Young's testimony. Likewise, the appellant has not shown that trial counsel was ineffective for failing to discover Young's testimony before trial or that the outcome of the trial would have been different had the *Page 148 
jury heard the testimony. Stricklwad v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The crux of the appellant's argument is that since the trial exculpatory evidence has been discovered that could, and should, have been used to impeach the testimony of the victim and other witnesses. The appellant contends that the most important evidence presented against the appellant was the victim's testimony. The appellant argues that because he did not have Young's testimony he was denied the opportunity to effectively cross-examine the victim.
Officer Taylor testified that the victim was not "distraught or upset" or crying when he arrived on the scene. R. 261. Young's testimony was similar to Taylor's except that Young added that the victim said that she had not been kidnapped or raped. The appellant was not charged with rape. The verdict of kidnapping in the second degree indicates that the jury did not believe the victim was raped. The only question is whether the appellant forced the victim to go with him. Testimony was presented that the appellant admitted that he used force to get the victim to go with him.
 "[I]n order to establish the necessity for a new trial based on newly discovered evidence, the appellant must prove: (1) that the evidence was discovered after the trial; (2) that the evidence could not have been discovered prior to trial by due diligence on the part of the movant; (3) that the evidence is material to the issue of the appellant's guilt; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would probably change the outcome if a new trial was granted. . . . The trial court is entitled to great deference in determining whether newly discovered evidence warrants a new trial and that decision will not be reversed absent a clear abuse of discretion."
Gillespie v. State, 644 So.2d 1284 (Ala.Cr.App. 1994).
In this case Young's testimony served only to impeach the victim. Because the appellant's statement to Boyd corroborated in most aspects the testimony of White and the victim, it is extremely unlikely that Young's testimony would have affected the outcome of the appellant's trial. It is unlikely that this newly discovered evidence would discredit the victim to such an extent that the outcome of the case would be altered.
The appellant has failed to establish that the new evidence is anything more than impeachment evidence and that the outcome of his trial would be different if the jury had been exposed to this evidence. Therefore, we cannot hold that the trial judge abused his discretion in denying the appellant a new trial based on alleged newly discovered evidence.
Based on the above, the appellant's conviction for kidnapping in the second degree is affirmed.
AFFIRMED.
All the Judges concur.