Taft Willingham was convicted of kidnapping in the second degree, in the Circuit Court of Morgan County, and was sentenced to 20 years in the state penitentiary. Willingham appealed, maintaining, among other things, that the State had violated his constitutional rights by withholding exculpatory information required to be disclosed by Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and, that as a result, he was entitled to a new trial. The Court of Criminal Appeals affirmed, holding that Willingham had failed to establish that the new evidence was anything more than impeachment evidence and that the outcome of his trial would have been different had the jury been exposed to this evidence. The Court of Criminal Appeals wrote:
 "[Willingham] contends that the trial court committed reversible error by denying his motion for a new trial after hearing the evidence presented at the hearing on the motion. He alleged that the State intentionally withheld the exculpatory testimony of Officer Fred Young, assistant chief of police for the Courtland Police Department and that trial counsel was ineffective for not discovering Young's testimony. At the hearing, Young testified that a subpoena had been issued ordering him to appear at [Willingham's] trial but that he was out of town when it was issued and did not return until after the trial. He testified that he had been dispatched to [Willingham's] home to investigate a possible kidnapping. He stated that the victim came out of [Willingham's] bedroom fully dressed. He said that 'she appeared to be all right up until the time I said she had to go to Decatur P. D.' He said that he drove her to meet the Decatur police. He said that he asked her if she had been raped or kidnapped and that the victim told him that she had not been.
 "The record does not support [Willingham's] contentions that the State intentionally withheld exculpatory evidence and that trial counsel was ineffective for not discovering Young's testimony. The evidence was that the State subpoenaed Young but that Young failed to appear. The prosecutors did not speak with Young before trial. Defense counsel acknowledged that he was 'not accusing [the prosecutor] of withholding evidence because [the prosecution] testified they have never talked to [Young].' There is nothing in the record to suggest that the State knew the *Page 150 
content of Young's testimony. Likewise, [Willingham] has not shown that trial counsel was ineffective for failing to discover Young's testimony before trial or that the outcome of the trial would have been different had the jury heard the testimony.
 "The crux of [Willingham's] argument is that since the trial[,] exculpatory evidence has been discovered that could, and should, have been used to impeach the testimony of the victim and other witnesses. [Willingham] contends that the most important evidence presented against [him] was the victim's testimony. [Willingham] argues that because he did not have Young's testimony he was denied the opportunity to effectively cross-examine the victim.
 "Officer [Alex] Taylor testified that the victim was not 'distraught or upset' or crying when he arrived on the scene. Young's testimony was similar to Taylor's except that Young added that the victim said that she had not been kidnapped or raped. [Willingham] was not charged with rape. The verdict of kidnapping in the second degree indicates that the jury did not believe the victim was raped. The only question is whether [Willingham] forced the victim to go with him. Testimony was presented that [Willingham] admitted that he used force to get the victim to go with him.
". . . .
 "In this case, Young's testimony served only to impeach the victim. Because [Willingham's] statement to [Detective Boyd, who was with the Decatur Police Department,] corroborated in most aspects the testimony of [James White, an eyewitness to the alleged offense,] and the victim, it is extremely unlikely that Young's testimony would have affected the outcome of [Willingham's] trial. It is unlikely that this newly discovered evidence would discredit the victim to such an extent that the outcome of the case would be altered.
 "[Willingham] has failed to establish that the new evidence is anything more than impeachment evidence and that the outcome of his trial would be different if the jury had been exposed to this evidence. Therefore, we cannot hold that the trial judge abused his discretion in denying [Willingham] a new trial based on alleged newly discovered evidence."
Willingham v. State, 695 So.2d 144, 147-49
(Ala.Crim.App. 1996). (Citations omitted.) Willingham petitioned for certiorari review, which we granted to review the Brady issue.
The crux of Willingham's argument concerns information held by Officer Fred Young of the Courtland Police Department. The Court of Criminal Appeals set out Willingham's argument in terms of a contention that the state withheld "Young's testimony." The record indicates that as of the time of the trial, Young had given no testimony. We understand Willingham to be saying that the prosecution withheld information possessed by Young, information as to which he could have testified at Willingham's trial.
Young was assistant chief of the Courtland Police Department. The first time he was interviewed about the alleged kidnapping was by Willingham's attorney in October 1995 (approximately five months after the jury had found Willingham guilty of kidnapping in the second degree and two months after the trial court had sentenced Willingham to life imprisonment). Before that time, no one from the Morgan County district attorney's office, the City of Decatur Police Department, or Willingham's defense team had talked to Young about the incident. Young did not know about Willingham's trial, because he had been out of town and had not returned to Courtland until the trial was over. Upon his return, the Courtland city clerk informed Young that the prosecutor had left a message requesting that Young return his telephone call.
On the evening of the alleged kidnapping, a Lawrence County radio dispatcher informed Young that a girl had been kidnapped and dispatched Young to Willingham's residence. When he arrived at Willingham's residence, he knocked on the door and Willingham answered the door. Young asked Willingham if a girl was there, and Willingham responded, "Yes." Young then asked Willingham to tell the girl to come to the door. Willingham yelled for the girl to come out, but she did not. Young then walked into *Page 151 
the house and yelled for her; she stuck her head out from behind a bedroom door. Young told the girl that she had to go with him. He spoke with the girl in his patrol car and asked her if she had been kidnapped. She told him "No." He asked her if she had been raped, and she told him "No." He asked her if she had been forced to go to Willingham's house, and she said "No." Young recalled advising the Lawrence County dispatcher that he would not need backup, because the girl had told him she had not been kidnapped, raped, or forced to go to Willingham's house.
According to Young, when the girl came out of Willingham's bedroom, she was fully dressed, her clothes were straight, she was not crying, she was not upset, and she did not appear to be frightened. He remembered telling Officer Alex Taylor of the North Courtland Police Department, over the radio, that the girl had told him she had not been raped, kidnapped, or forced to go to Courtland with Willingham.
Young told the girl that she would have to go with him to meet the Decatur police officers, and she began crying and asked, "Do I have to go?" Young drove the girl to where the Decatur police officers were and left her with them. Young stated that he had seen many rape victims during his 25 years as a police officer and that, in his opinion, the girl was not afraid.
The jury did not hear what Young had seen and heard, because he did not testify at trial, nor was the jury advised that the girl had previously denied being kidnapped or raped and that she had changed her story at trial. Rather, that evidence was first discovered by Willingham's new appellate attorney after the trial.
"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution." Brady v. Maryland,373 U.S. at 87, 83 S.Ct. at 1197. See, also, Kyles v. Whitley,514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley,473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).
 "Although the constitutional duty [to disclose exculpatory evidence] is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). . . . Bagley's touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.' Bagley, 473 U.S. at 678, 105 S.Ct. at 3381.
 "The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."
Kyles v. Whitley, 514 U.S. at ___, 115 S.Ct. at 1566.
The same standard of materiality and the same due process requirement apply *Page 152 
whether the evidence would have been useful for exculpation or for impeachment. "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within [the] general rule." Giglio v. United States, 405 U.S. 150, 154,92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1971) (quoting Napue v. Illinois,360 U.S. 264, 266, 79 S.Ct. 1173, 1175, 3 L.Ed.2d 1217 (1959)). In short, due process requires the prosecution to disclose material evidence, upon request by the defense, when the evidence would tend to exculpate the accused or to impeach the veracity of a critical state's witness. It is immaterial whether the prosecutor personally knew of the exculpatory evidence, because the knowledge of investigating officers is imputed to the prosecution.
There is no proof in this case that the prosecutor personally knew of the alleged victim's statement to Young. There is proof, however, that the prosecutor knew of Young's involvement in the investigation, because his name appeared as a witness on the indictment against Willingham, he assisted in the investigation that led to Willingham's arrest, and the State attempted to contact him during the week of trial. Clearly, Young, as assistant chief of police of the Courtland Police Department, was very much a part of the prosecution team, and his knowledge was imputed to the prosecution. Had Young testified, his testimony would have contained exculpatory and impeachment information that would have been useful to the defense. Young's testimony would have been favorable to Willingham and would have been relevant and material to the key issue at trial. The alleged victim's out-of-court statement to Young — that Willingham had not kidnapped or raped her — would have added weight to Willingham's claim that he was innocent of the offense charged and would have raised a reasonable doubt about his guilt. The State suppressed evidence of Young's knowledge. At the very least, the State should have given the impeaching information to Willingham. There is certainly a reasonable probability that had Young testified the results of the trial would have been different.
Accordingly, confidence in the outcome of the trial has been undermined. Therefore, we hold that Willingham was denied due process. That denial requires a reversal of his conviction and a new trial.
The judgment of the Court of Criminal Appeals is reversed and the case is remanded for that court to order further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, KENNEDY, COOK, and BUTTS, JJ.