On February 7, 2001, Korey Dewayne Woods was convicted of discharging a firearm into an occupied vehicle, a violation of § 13A-11-61, Ala. Code 1975. The circuit court sentenced Woods to 10 years in prison; that sentence was split, and Woods was ordered to serve 2 years' imprisonment and the remaining 8 years on probation.
Woods asserts three issues on appeal, and we address each in turn.
 I.
First, Woods argues that the trial court erred in denying his Batsonv. Kentucky, 476 U.S. 79 (1986), motion. Specifically, Woods contends the trial court erred when it failed to require the State to provide race-neutral reasons for its peremptory strikes. We disagree.
The 27-person venire included 15 blacks. The State used five of its seven strikes to remove blacks. Woods made a timely objection at trial, and argued that the State struck five blacks. Woods claimed that, in his opinion, the State had struck the five blacks because of race, and he asked the court to require the State to provide a race-neutral reason for each strike. Woods did not offer any additional evidence to support hisBatson motion, and the trial court denied it.
The party claiming a Batson violation must first establish a prima facie case of discrimination before the other side is required to state its reasons for its peremptory strikes. See Ex parte Pressley, *Page 845 770 So.2d 143, 145 (Ala. 2000); Stokes v. State, 648 So.2d 1179, 1180
(Ala.Crim.App. 1994). While "[c]ircumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury," Woods has offered no such evidence, and eight blacks remained on the venire following the peremptory strikes by both sides. Ex parte Branch, 526 So.2d 609, 623 (Ala. 1987). It is undisputed that the State used five of its seven strikes to remove blacks from the venire. However, statistics and opinion alone do not prove a prima facie case of discrimination. See Johnson v. State 823 So.2d 1
(Ala.Crim.App. 2001).
The trial court noted when it denied Woods's Batson motion that the prosecutors in his case had not displayed a history of discriminatory strikes in previous trials in that courtroom. Woods failed to make a prima facie case of discrimination, so the trial court's ruling on theBatson motion was not clearly erroneous. Therefore, Woods's claim is without merit.
 II.
Woods next contends that the trial court erred by denying his motion for judgment of acquittal. We disagree.
 A.
Woods preserved this claim for appellate review with the following oral motion for a judgment of acquittal:
 "We would move at this time for a directed verdict of acquittal for the charge of firing into an occupied vehicle. Judge, we do not believe the State has made out a prima facie case against the defendant, Korey Woods. And in effect, we believe the evidence is totally insufficient to warrant this case going to the jury, Your Honor. We do not think it has comprised the elements necessary to entitle the jury to receive the charge on firing into an occupied vehicle."
(R. 237-38.) Woods also argued that the State had called only one of the alleged victims to testify, and then reiterated that the State had failed to prove that shots were actually fired at or into an occupied vehicle. The district attorney contended that the State had made out a prima facie case. He further stated that the second victim was not called to testify because that victim was Woods's wife, and she could not be forced to testify against her husband.[1] The other victim, a man, testified that the tire on his vehicle went flat immediately after Woods fired the gun. The trial judge denied Woods's motion for a judgment of acquittal.
Section 13A-11-61, Ala. Code 1975, in relevant part, provides:
 "(a) No person shall shoot or discharge a firearm, explosive or other weapon which discharges a dangerous projectile into any occupied or unoccupied dwelling or building or railroad locomotive or railroad car, aircraft, automobile, truck or watercraft in this state."
The Alabama Supreme Court addressed the appellate court's role in reviewing the sufficiency of the evidence in criminal cases in Ex parteWoodall, 730 So.2d 652 (Ala. 1998):
 "`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485
(Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. *Page 846 
1985).' Powe v. State, 597 So.2d 721, 724 (Ala. 1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361
(Ala.Cr.App. 1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054
(Ala.Cr.App. 1992). Thus, `[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.' Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978) (emphasis original)."
730 So.2d at 658.
The evidence here, viewed most favorably to the State, tended to show that on July 12, 1998, Lakell Freeman and Laquettia Mercer were driving in his vehicle following a date. Freeman testified that he had been dating Mercer for about a month, and that he did not know Woods. Freeman was about to drop Mercer off, when Mercer told him to keep driving "because her baby's father was coming and she was scared." (R. 74.) Freeman testified that another car pursued his car, and that he saw the driver of that other car fire a pistol at his car. Freeman identified Woods as the man who pursued him and shot at him. Freeman testified that five shots were fired, that his car sustained two bullet holes in the fender, and that a tire on his car was shot out. Photographs introduced at trial showed the damage Freeman's car sustained. Officer Raynard Escott, who took statements from Freeman and Mercer after the incident, testified that Mercer identified Woods as the gunman. Based on our review of the record, we find that the State presented sufficient evidence to submit the case to the jury on the charge of unlawfully discharging a firearm into an occupied vehicle. Thus, Woods is not entitled to relief on this claim.
 B.
In his reply brief, Woods seems to make an argument concerning the weight of the evidence, when he argues that contradictory evidence was presented at trial and that "there is a logical explanation" — besides his shooting at it — for the damage to Freeman's car. (Woods's Reply Brief, p. 5.) This issue is being raised for the first time on appeal and thus has not been preserved for our review. SeeMeadows v. State, 773 So.2d 1053, 1054 (Ala.Crim.App. 2000). We note, also, that an appellant may not raise a new issue for the first time in a reply brief. James v. State, 788 So.2d 185, 192 n. 2 (Ala.Crim.App. 2000).
Moreover, even had this issue been preserved, we would still find Woods's argument to be without merit. The jury was in the best position to view the evidence, and this Court will not reverse its verdict. "`Conflicting evidence is always a question for the jury to determine, and a verdict rendered thereon will not be disturbed on appeal.'" Snellv. State, 715 So.2d 920, 923 (Ala.Crim.App. 1998) (internal citations and quoting Ex parte Suggs, 403 So.2d 309, 313 (Ala.Crim.App. 1981)). "`The credibility of witnesses and the weight to be given the testimony is for the jury to determine.'" McLeod v. State, 627 So.2d 1066, 1068
(Ala.Crim.App. 1993) (quoting Bennett v. State, 584 So.2d 869, 871
(Ala.Crim.App. 1990)). Therefore, even if Woods had preserved this issue for appellate review, he would still not be entitled to relief.
 III.
Woods argues that the trial judge erred in refusing to charge the jury on the *Page 847 
lesser-included offenses of reckless endangerment and menacing. We disagree.
Woods preserved this issue for our review with a proper and timely objection to the trial judge's refusal to give his requested jury instructions. Rule 21.3, Ala.R.Crim.P.
Whether a crime constitutes a lesser-included offense is to be viewed on a case-by-case basis, and based on the specific facts of each case. See McNabb v. State, [CR-98-0967, October 26, 2001] ___ So.2d ___, ___ (Ala.Crim.App. 2001).
In Whitehead v. State, 777 So.2d 781, 844 (Ala.Crim.App. 1999), aff'd,777 So.2d 854 (Ala. 2000), this Court held:
 "`"A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury."'"
Whitehead v. State, 777 So.2d at 844 (quoting Williams v. State,675 So.2d 537, 540 (Ala.Crim.App. 1996), quoting other cases).
 "`While the appellant's denial of shooting the gun does not necessarily preclude him from having a jury instruction on a lesser included offense, the absence of any evidence to support a theory of a reckless shooting does prevent him from receiving the lesser included offense instruction. In Ex parte Stork, 475 So.2d 623
(Ala. 1985), the Alabama Supreme Court reviewed the issue of whether a defendant is entitled to a jury charge on a lesser included offense when he denies committing the crime itself. The Alabama Supreme Court refused to consider the defendant's testimony a bar to giving the charge, and held that a defendant is entitled to the charge on the lesser included offense as long as the charge is "based upon any material hypothesis which the evidence in his favor tends to establish." Id. at 624. In this case, there was never any evidence offered to support a theory that the shooting was the result of merely reckless conduct. Thus, there was no material basis for a theory of reckless manslaughter.'"
Dorsey v. State, [Ms. CR-97-1522, May 25, 2001] ___ So.2d ___, ___ (Ala.Crim.App. 2001) (quoting Bone v. State, 706 So.2d 1291, 1297-98
(Ala.Crim.App. 1997)).
Section 13A-6-24(a), Ala. Code 1975, provides that "[a] person commits the crime of reckless endangerment if he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." Section 13A-6-23(a), Ala. Code 1975, provides that "[a] person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury."
While on the witness stand, Woods testified that he followed, but did not pursue, Freeman, that he did not have a gun in his possession while he was following Freeman, and that he did not fire a gun at that time.
 "[Defense attorney]. And right after [Freeman] pulled out, you heard him testify that you fired a shot at him. Is that true?
 "[Woods]. Yes, I heard him testify that I fired a shot at him.
"[Defense attorney]. Is that true, sir?
"[Woods]. No, sir. That's not true.
 "[Defense attorney]. Have you ever owned a weapon of any kind?
"[Woods]. Never in my life.
 "[Defense attorney]. Have you ever shot a pistol of any kind?
"[Woods]. No, sir. Never in my life.
". . . . *Page 848 
"[Defense attorney]. And were you chasing them?
"[Woods]. No, sir."
(R. 245.) Woods also testified as follows:
 "When [Freeman] turned right on Avenue W, he began to mash the gas real hard and his back end — the rear end — of the car started fishtailing. Therefore, I was behind them. Slowly stopped. I stopped immediately when he was fishtailing. Then when he got halfway up the [railroad] track, he hit it again. He mashed the gas acceleration again, and that's when he started spinning again. So I was slowly driving behind him. When he had acceleration on the tracks, that's when the tire blew out."
(R. 246-47.)
Woods testified that he was following, but was not pursuing Freeman's car, and that he did not want to find out who she was in the car with because he "didn't want a confrontation." (R. 269.) Woods testified that he did not point a gun out of his car window and fire at Freeman's car, and that the "windows didn't let down on the car I was driving." (R. 282.)
At the close of the evidence, Woods asked if the trial court had reviewed his requested jury charges. The trial judge stated that he was concerned about the charges on menacing and on reckless endangerment. The State indicated that it would object to those charges. Woods argued that the jury could find reckless endangerment from a high-speed chase or from the presence of a gun that was not fired into Freeman's car. Woods, cites on appeal, as he did at trial, Farmer v. State, 565 So.2d 1238
(Ala.Crim.App. 1990), and Moore v. State, 647 So.2d 43 (Ala.Crim.App. 1994), to support his contention that the trial court erred in rejecting his requested jury charges on menacing and reckless endangerment.
The trial judge, following a 15-minute recess, declined to give Woods's requested jury charges, stating:
 "For purposes of the record, the Court, after long consideration and reading the relevant legal authority regarding lesser-included offenses in this case, I have decided not to give any lesser-included offenses in this case because the Court feels there is no evidentiary basis in this case to give such lesser-included offenses.
 The evidence is that either the defendant intentionally discharged the firearm into an occupied automobile or he didn't. And to give any lesser-included offenses would be confusing to the jury. And quite frankly under the facts in this case, the Court doesn't know how it would explain the differences between discharging a firearm and reckless endangerment."
(R. 354.)
In Farmer, this Court stated: "Under the facts of this case, we find that reckless endangerment is a lesser included offense of discharging a firearm into an occupied dwelling." Farmer v. State, 565 So.2d at 1240.
However, the facts here are distinguishable from those in Farmer. Farmer evidently admitted to the actual shooting, because he raised self-defense, and he also argued that it was possible to fire into a dwelling without recklessly endangering.
Here, Woods denied committing any crime. Woods did not argue that any mitigating factors were present or that any privilege existed. There was no testimony that a chase occurred without the gunfire, or that a gun was brandished without being fired.
There was no evidence to support a theory that Woods intended merely to place Freeman and Mercer in fear of *Page 849 
imminent harm, as is required for menacing. See Willingham v. State,695 So.2d 144, 147 (Ala.Crim.App. 1996), reversed on other grounds,695 So.2d 148 (Ala. 1996) (the appellant was either guilty of second degree kidnapping or nothing at all and was not entitled to a jury charge on menacing).
While we recognize that there are situations where reckless endangerment can be a lesser-included offense of discharging a firearm into an occupied vehicle, this is not such a case. The evidence showed either that Woods fired a gun into an occupied vehicle or that he committed no crime at all.
Thus, we find no "reasonable theory from the evidence" to support Woods's claim that he was entitled to a jury instruction on menacing or reckless endangerment. See Dorsey, ___ So.2d at ___ (quoting Jones v.State, 753 So.2d 1174, 1189 (Ala.Crim.App. 1999)). The trial court did not err in denying Woods's requested jury charges on the grounds that the evidence did not establish the lesser-included offenses. See Whitehead, 777 So.2d at 844.
For the above-stated reasons, Woods's conviction and his sentence are due to be affirmed.
AFFIRMED.
McMillan, P.J., and Baschab, Shaw, and Wise, JJ., concur.
[1] Woods and Mercer were not married at the time of the incident, but had one child together. After the incident in question, but before Woods's trial, they married.