WISE, Judge.
The appellant, T.P.,[1] was convicted of one count of first-degree sexual abuse, a violation of § 13A-6-66, Ala.Code 1975. Because he had two prior felony convictions, he was sentenced as a habitual offender to life imprisonment.
The evidence presented at trial tended to establish that on July 18, 2002, Investigator Dean McGowan of the Baldwin County Sheriffs Department was contacted by the Baldwin County Department of Human Resources (“DHR”) concerning a suspected case of child sexual abuse. McGowan and Stephanie Buehler, a DHR social worker, interviewed eight-year-old B.P. (“the victim”). Buehler took the lead role during the interview; McGowan took notes during the interview but did not otherwise participate in interviewing the *1120 victim. Also present during the interview was the victim’s mother.
During the interview, Buehler and the victim discussed “good touches” and “bad touches.” They also discussed which parts of the body were considered “private parts.” During this part of the discussion, Buehler showed the victim a book with drawings of a girl and a boy wearing bathing suits. Buehler explained that the areas under a bathing suit were considered to be “private parts” of the body. Buehler asked the victim if anyone had ever touched his private parts, to which the victim responded that his grandfather, T.P., had touched him on his buttocks. Further questioning established that on at least one occasion his grandfather had touched the victim’s buttocks through his clothing. On at least one other occasion, the victim told Buehler that his grandfather had taken him inside a camper, unfastened his pants, and placed his hands under his underwear on his bare buttocks. The victim stated that his grandfather told him not to tell his daddy — T.P.’s son— what had happened. The victim told Buehler the last time that his grandfather had touched his buttocks occurred just a few days before the interview.
Buehler and McGowan were advised that T.P. was a registered sexual offender who had been released from prison in January 2002 after completing a 10-year prison sentence for child sexual abuse. Following his release, T.P. returned to Baldwin County and lived next door to his son, the victim’s father. The victim’s parents were divorced and the victim lived with his mother; the father had scheduled visitation.
Later that day, McGowan interviewed T.P. at the sheriffs office in Robertsdale. McGowan explained to T.P. the nature of the investigation. He advised T.P. of his Miranda[2] rights. T.P. indicated that he understood those rights; he thereafter elected to waive those rights and to be interviewed by McGowan. Initially, T.P. denied touching his grandson inappropriately. He implied that the allegations were the result of custody issues between the victim’s parents — his son and former daughter-in-law. Later in the interview, however, T.P. asked McGowan “what would happen to somebody if they committed the crime that he was being accused of.” (R. 30.) Eventually, T.P. told McGowan that he was going to tell him the truth. According to McGowan, T.P. said that the victim “liked to grab people on the penis and on the butt, and he said that [the victim] had done that to him.” (R. 30.) The victim’s actions made T.P. think that he “might be interested in having some kind of sexual contact with him.” (R. 30.) T.P. then told McGowan that when the victim came to see him at his camper he “fondled his butt cheeks on the outside of his clothes.” (R. 31.) A few days later, he said, he took the victim inside the bedroom of the camper, unbuttoned the victim’s pants, put his hands down the back of the victim’s underwear, and “played with his little hiney cheeks.” (R. 31.) T.P. agreed to give McGowan an audiotaped statement to this effect. Following T.P.’s audiotaped statement, McGowan arrested T.P. on a charge of first-degree sexual abuse.
At trial, Buehler and McGowan testified regarding their actions during the investigation. Although the State had planned to have the victim testify, it advised the circuit court that the victim would be unable to testify. After hearing expert testimony to the effect that forcing the victim to testify could result in emotional trauma to the victim, the circuit court determined that the victim was “unavailable to testify,” *1121 and that his out-of-court statements to Buehler were admissible under § 15-25-32, Ala.Code 1975. Over the objection of defense counsel, Buehler was permitted to testify regarding the victim’s statements to her.[3]
Two other witnesses also testified— M.B.L. and L.A.B. Both witnesses testified that T.P. had at one time been married to their aunt. Both witnesses — who were adults at the time of this trial — testified that while they were children T.P. had sexually abused them. The circuit court instructed the jury that M.B.L. and L.A.B.’s testimony could not be considered as evidence of T.P.’s guilt in the present case. Instead, the court advised, the evidence was being offered in order to establish T.P.’s motive, opportunity, intent, preparation, or plan, or that the contact did not occur as a result of mistake or accident.
The defense presented no witnesses. At the close of all the evidence, the circuit court instructed the jury on the law applicable to T.P.’s case. The jury returned a verdict finding T.P. guilty of first-degree sexual abuse. This appeal followed.
T.P. argues that the circuit court committed reversible error in admitting the victim’s out-of-court statements into evidence because, he says, the requirements of § 15-25-32 were not met. Alternatively, T.P. argues that the recent United States Supreme Court decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), mandates that his conviction be reversed because, he says, the admission of this testimony violated his rights under the Confrontation Clause to the Sixth Amendment of the United States Constitution. Although Crawford was decided after T.P.’s trial occurred, its holding is nevertheless applicable to this case: “a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.... ” Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).
In Crawford, the United States Supreme Court held that the admission of a wife’s out-of-court statements to police officers, regarding an incident in which the defendant, her husband, allegedly stabbed the victim, violated the Confrontation Clause. The Supreme Court stated that an out-of-court statement by a witness that is testimonial is barred under the Confrontation Clause, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statement is deemed reliable by the trial court, abrogating its previous holding in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).
Although this Court has applied the holding in Crawford v. Washington, to nontestimonial hearsay, see, e.g., Perkins v. State, 897 So.2d 457 (Ala.Crim.App.2004); and Smith v. State, 898 So.2d 907 (Ala.Crim.App.2004), this is the first occasion we have had to address the holding in Crawford v. Washington as it applies to testimonial hearsay.
The Confrontation Clause, as contained in the Sixth Amendment to the United States Constitution, provides: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” In Ohio v. Roberts, the United States Supreme Court *1122 noted: “If one were to read this language literally, it would require, on objection, the exclusion of any statement made by a de-clarant not present at trial.... But, if thus applied, the Clause would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme.” 448 U.S. at 63, 100 S.Ct. 2531. Instead, the Court established a two-part analysis for determining whether certain testimony violated the Confrontation Clause; this analysis focused on the necessity and reliability of the testimony. The Roberts Court held that a hearsay statement satisfied the Sixth Amendment’s Confrontation Clause, despite a lack of face-to-face confrontation and cross-examination, so long as (1) the declarant is unavailable and (2) the hearsay statement “bears adequate ‘indicia of reliability.’” 448 U.S. at 66, 100 S.Ct. 2531. “Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.” Id. Later decisions by the Supreme Court refined its holding in Ohio v. Roberts, appearing to reject the “unavailability” prong of that test. See White v. Illinois, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), and United States v. Inadi, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). Nevertheless, this framework governed the interplay between hearsay and the Confrontation Clause, until the decision in Crawford v. Washington, which revisited the Court’s holding in Ohio v. Roberts. See, e.g., Lilly v. Virginia, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); White v. Illinois, supra; Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). The framework required courts to identify and evaluate the factors that bore upon the reliability of a hearsay statement.
Alabama law authorizes the admission of an out-of-court statement made by a child under the age of 12 under certain circumstances. Section 15-25-31, Ala.Code 1975, provides:
“An out-of-court statement made by a child under 12 years of age at the time of the proceeding concerning an act that is a material element of any crime involving child physical offense, sexual offense, and exploitation, as defined in Section 15-25-39, which statement is not otherwise admissible in evidence, is admissible in evidence in criminal proceedings, if the requirements of Section 15-25-32 are met.”
Section 15-25-32 provides:
“An out-of-court statement may be admitted as provided in Section 15-25-31, if:
“(1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by Section 15-25-2, or testifies by means of closed circuit television as is provided in Section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements; or
“(2)a. The child is found by the court to be unavailable to testify on any of these grounds:
“1. The child’s death;
“2. The court finds that there are reasonable grounds to believe that the defendant or someone acting on behalf of the defendant has intentionally removed the child from the jurisdiction of the court;
“3. The child’s total failure of memory;
“4. The child’s physical or mental disability;
“5. The child’s incompetency, including the child’s inability to commu *1123 nicate about the offense because of fear or a similar reason; or
“6. Substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of closed circuit television; and
“b. The child’s out-of-court statement is shown to the reasonable satisfaction of the court to possess particularized guarantees of trustworthiness.”
The statutory hearsay exception created by § 15-25-31 was enacted to address the special problems inherent in cases involving the exploitation or physical or sexual abuse of children. In an attempt to ensure the constitutionality of the statute, the Legislature incorporated the Ohio v. Roberts framework into § 15-25-32(2), predicating the admissibility of a child’s out-of-court statement on a judicial determination of the child’s unavailability, together with a determination that the statement bears “particularized guarantees of trustworthiness.”
Unfortunately, the decision in Crawford v. Washington renders the Legislature’s attempt to satisfy the Ohio v. Roberts standard superfluous. With regard to the declarant, Crawford v. Washington requires both unavailability and an opportunity for cross-examination. Section 15-25-32(2) requires the declarant’s unavailability; however, the statute does not provide that the defendant have had an opportunity to cross-examine the declarant.
Although the Supreme Court held that Crawford applied to testimonial statements, it did not provide a comprehensive definition of testimonial statements, stating merely that “[wjhatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.” 541 U.S. at 68, 124 S.Ct. at 1374. In the present case, B.P.’s statements were the result of an interview conducted by DHR social worker Stephanie Buehler and Investigator Dean McGowan, as part of a criminal investigation. Under these circumstances, we conclude — as have other jurisdictions — that because the interview was intended to be used as an investigative tool for a potential criminal prosecution, the interview is similar to a police interrogation and, thus, falls within the definition of “testimonial” contained in Crawford v. Washington. See People v. Sisavath, 118 Cal.App.4th 1396, 13 Cal.Rptr.3d 753 (2004) (statement of minor to interviewer at facility for child sexual-abuse victims was “testimonial” because it was made under circumstances that would lead witness to believe that the statement would be available for use at trial); Snowden v. State, 156 Md.App. 139, 846 A.2d 36 (2004) (statements of minors to social worker were “testimonial” because they were made for purpose of developing their testimony for trial).[4] Therefore, B.P.’s statements to Buehler clearly fit within the scope of “testimonial” hearsay Crawford v. Washington holds is subject to the Confrontation Clause. Accordingly, the circuit court erred when it allowed Buehler to testify regarding B.P.’s statement that his grandfather touched his *1124 private parts on several occasions.[5] Having concluded that the circuit court erred in admitting Buehler’s testimony regarding B.P.’s statements, we must now determine whether this error warrants reversal. Rule 45, Ala.R.App.P., provides:
“No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of ... improper admission or rejection of evidence ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
This Court has traditionally applied a harmless-error analysis to claims alleging a violation of the Confrontation Clause. See, e.g., Flowers v. State, 799 So.2d 966, 982 (Ala.Crim.App.2000) (quoting State v. Martinez, 99 N.M. 48, 52, 653 P.2d 879, 884 (Ct.App.1982)); Withee v. State, 728 So.2d 684, 688 (Ala.Crim.App.1998); Grantham v. State, 580 So.2d 53, 58 (Ala.Crim.App.1991).
In determining whether the error in this case was harmless, we first look to the Supreme Court’s opinion in Crawford v. Washington. In remanding that case to the Washington Supreme Court for further proceedings, it noted that the state appellate court had found the confrontation violation “not harmless.” 541 U.S. at 42 n. 1, 124 S.Ct. at 1359 n. 1. From this, we infer that while Crawford v. Washington fundamentally alters the way we analyze claims of error under the Confrontation Clause, the opinion does not change the way we evaluate the effect of any such error. Accordingly, we must now determine whether the constitutional violation in this case is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see also Perkins v. State, 897 So.2d at 465; Smith v. State, 898 So.2d at 918.[6]
Even without Buehler’s testimony that B.P. told her that T.P. had touched his private parts on several occasions, the evidence presented by the State was sufficient on which to base a finding that T.P. was guilty of first-degree sexual abuse. Indeed, the State offered evidence that T.P. himself admitted to Investigator McGowan that he had touched his grandson’s bare buttocks in an inappropriate manner.[7]
On appeal, T.P. does not challenge the voluntariness of his inculpatory statements. Instead, he states that “in the absence of B.P.’s statements, the State would have been unable to establish the corpus delicti of the charged offense, as a foundational prerequisite to the admission of [his] inculpatory statements.” This statement is incorrect.
*1125 “It has been the rule in Alabama that the State must offer independent proof of the corpus delicti of the charged offense to authorize the admission of a defendant’s confession or inculpatory statement. Robinson v. State, 560 So.2d 1130, 1135-36 (Ala.Cr.App.1989); see C. Gamble, McElroy’s Alabama Evidence, 200.13 (5th ed.1996). ‘ “The corpus de-licti consists of two elements: ‘(1) That a certain result has been produced, ... and (2) that some person is criminally responsible for the act.’ ” Johnson v. State, 473 So.2d 607, 608 (Ala.Cr.App.1985),] (quoting C. Gamble, McElroy’s Alabama Evidence § 304.01 (3d ed.1977)).’ Spear v. State, 508 So.2d 306, 308 (Ala.Cr.App.1987). ‘ “Positive, direct evidence of the corpus delicti is not indispensable to the admissions of confessions.” ’ Bracewell v. State, 506 So.2d 354, 360 (Ala.Cr.App.1986), quoting Ryan v. State, 100 Ala. 94, 14 So. 868 (1894). ‘The corpus delicti may be established by circumstantial evidence.’ Sockwell v. State, 675 So.2d 4, 21 (Ala.Cr.App.1993), aff'd, 675 So.2d 38 (Ala.1995), cert. denied, 519 U.S. 838, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996).”
Maxwell v. State, 828 So.2d 347, 357 (Ala.Crim.App.2000).
Here, Buehler testified, without objection, that B.P. told her someone had touched his private parts. Although hearsay, this testimony became legal evidence upon its receipt into evidence without objection. See Johnson v. State, 642 So.2d 528, 529-30 (Ala.Crim.App.1994) (hearsay evidence admitted without objection is lawful evidence). Moreover, the perpetrator’s identity is not required to establish the corpus delicti. See Bland v. State, 601 So.2d 521, 525 (Ala.Crim.App.), opinion after remand, 605 So.2d 849 (Ala.Crim.App.1992). Buehler’s testimony, together with State’s exhibits 3 and 4— drawings showing on what part of his body B.P. was touched which were also admitted without objection — and the testimony of M.B.L. and L.A.B. was sufficient to establish the corpus delicti. Thus, contrary to T.P.’s claim, proof of the corpus delicti was established independent of his inculpatory statements. Accordingly, T.P.’s statements were properly admitted into evidence. In light of the admission of T.P.’s unchallenged inculpatory statements to Investigator McGowan, the admission of Buehler’s hearsay testimony regarding the identity of B.P.’s abuser did not affect the outcome of the trial or otherwise prejudice T.P.’s right to a fair trial.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
McMILLAN, P.J., concurs; COBB and SHAW, JJ., concur in the result; BASCHAB, J., recuses herself.

. Initials are used throughout the opinion to protect the anonymity of the victim, who is related to the appellant. See Rule 52, Ala. R.App.P.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In addition to T.P.'s in-court objection, defense counsel also filed a written motion objecting to the admission of the victim's out-of-court statements to Buehler on the grounds (1) that the victim had not been found to be unavailable pursuant to § 15-25-32; and (2) that T.P. had a right to confront and cross-examine his accuser. (C. 26.)

. At least one jurisdiction has distinguished between statements made by minors to police officers or other government employees and those made to nongovernment employees. See People v. Geno, 261 Mich.App. 624, 630, 683 N.W.2d 687, 692 (2004) (statement made by child was not "testimonial” because it was made to a nongovernment employee and was not a statement in the nature of " ‘ex parte in-court testimony or its functional equivalent' ”). Because B.P.’s statements were made to government employees, this holding is irrelevant to the facts of this case.

. Because T.P. does not challenge the constitutional validity of § 15-25-32(2), we need not address the constitutionality of that statute.

. Following the release of Crawford v. Washington, other jurisdictions have likewise reviewed Confrontation Clause claims under a harmless-error standard. See, e.g., People v. Pirwani, 119 Cal.App.4th 770, 14 Cal.Rptr.3d 673 (2004); People v. McBee, 8 A.D.3d 500, 778 N.Y.S.2d 287 (2004); Davis v. United States, 848 A.2d 596 (D.C.2004); Brooks v. State, 132 S.W.3d 702 (Tex.Ct.App.2004).

.The appellant's motion for a judgment of acquittal based on the State's failure to prove a prima facie case of sexual abuse preserved the issue whether the State established the corpus delicti of sexual abuse because a confession or admission alone cannot support a conviction. See Bush v. State, 695 So.2d 70, 117 (Ala.Crim.App.1995) (citing Watters v. State, 369 So.2d 1262 (Ala.Crim.App.1978)).