PER CURIAM.
The appellant, L.J.K., was indicted for three counts of sexual abuse in the first degree, violations of § 13A-6-66(a)(3), Ala. Code 1975, and three counts of sodomy in the first degree, violations of § 13A-6-63(a)(3), Ala.Code 1975. Count I charged L.J.K. with the sexual abuse of his then four-year-old son, I.K.; Count II charged L.J.K. with the sexual abuse of his then four-year-old daughter, M.K.; Count III charged L.J.K. with the sexual abuse of his then six-year-old daughter, F.K.;[1] Count IV charged L.J.K. with the sodomy of I.K.; Count V charged L.J.K. with the sodomy of M.K.; and Count VI charged L.J.K. with the sodomy of F.K. The trial court granted L.J.K.’s motion for a judgment of acquittal at the close of the State’s case as to Count IV and dismissed that charge. A jury convicted L.J.K. of sexual abuse as charged in Counts I through III, and of sodomy as charged in Counts V and VI. The trial court sentenced L.J.K. to 10 years’ imprisonment for each of the sexual-abuse convictions and to life imprisonment for each of the sodomy convictions. The three 10-year sentences were to run concurrently with each other and with the two life-imprisonment sentences; the two life-imprisonment sentences were to run consecutively to each other.
The evidence adduced at trial indicated the following. In the summer of 2002, L.J.K. and his three children moved in with L.J.K’s then girlfriend, W.K.,[2] and her 12-year-old son, J.D. In October 2002, L.J.K. was arrested for domestic violence with respect to J.D.[3] Upon his arrest, L.J.K. requested that his children be removed from the home and placed in foster care;[4] the evening of L.J.K’s arrest, the children were picked up by an employee of the Dale County Department of Human Resources (“DHR”) and taken to the Wiregrass Children’s Home. The following day, pursuant to standard procedure, the children were taken for medical examinations. After the examinations, Teresa Robbins, a child-abuse investigator with DHR, drove the children back to the Wiregrass Children’s Home. During the drive, Robbins said, M.K. began singing “I suck Daddy’s weenie” over and over. (R. 51.) Robbins reported M.K.’s statements and later interviewed the three children, as well as J.D.
Robbins testified that M.K. told her that “she did suck Daddy’s weenie”; that her father “put chalk in her mouth,” which Robbins said indicated semen; and that “she had licked [F.K’s] cat,” which Robbins said was the name M.K. and F.K. used when referring to their vaginal areas. (R. 55.) Robbins testified that when she asked F.K. whether she and M.K. had ever “licked each other,” F.K. said yes. (R. 56.) Robbins testified that I.K. told her that he had never been touched by anyone, but *858 that “he had seen [F.K.] and [M.K.] lick” and that “[h]e had seen [F.K.] and [M.K.] in the bed with [W.K.], licking [W.K.](R. 56.) Robbins testified that J.D. told her that “he had witnessed [M.K.] and [F.K.] on the floor with no clothes on, licking each other” and that “he had seen [L.J.K.] join in,” but that J.D. did not explain what he meant by “join in.” (R. 57.) Believing the children’s statements to be credible, Robbins notified the police.
The three children were later interviewed again by Sherry Shaw, a forensic evaluator at the Southeast Alabama Child Advocacy Center. Shaw testified that F.K. told her that “[M.K.], [J.D.,] and her daddy had — they liked to lick her cat” (R. 98); that “she had licked her sister’s cat before,” but that “it tastes nasty,” so “she just licks weenies” (R. 99); and that “she had licked her daddy’s weenie, [J.D.’s] weenie, and [I.K.’s] weenie.” (R. 99.) Shaw testified that M.K. told her that “[J.D.] had licked her cat and kissed her booty,” which Shaw said was the name M.K. used for her buttocks (R. 100); that “[F.K.] licked her cat” but would not kiss her “booty” even though she had “kissed [F.K’s] booty” (R. 101); that “[I.K.] licks her cat but he doesn’t like to, and he just wants her to suck his weenie” (R. 101); and that her “daddy licks her eat, too, but that she couldn’t tell [Shaw] about that” because she didn’t “want [her] daddy to get in trouble.” (R. 101.) Shaw testified that I.K. told her that “[m]y daddy doesn’t touch my weenie ... I only touch daddy’s weenie, and I touch [F.K.] and [M.K.’s] cat” (R. 102); that “his sisters had touched ... his dad’s weenie” (R. 102); but that “he couldn’t talk about anything about his daddy because his daddy is good and he doesn’t want his daddy to be in trouble.” (R. 102-03.)
Lois Madison, a therapeutic foster parent, testified that F.K., M.K., and I.K. were placed in her home in 2002 and stayed with her for nine months. She said that, during their stay, F.K. had repeated vaginal yeast infections; that twice she had caught M.K. on top of F.K. “grinding in a sexual motion” (R. 34); and that she had once caught M.K. masturbating in her bedroom in the presence of F.K. In addition, Madison testified that on two occasions she fell asleep watching cartoons with the children and awoke to I.K’s attempting to perform sexual acts on her. Specifically, Madison said that the first time she awoke to I.K’s “rubbing my buttocks and kissing me from behind” (R. 36), and that the second time she awoke and I.K. was “between [her] legs with his mouth on [her] privates.” (R. 36.)
D.C. and P.C., friends of J.D., both testified that they had seen inappropriate sexual conduct involving the three children and L.J.K. D.C. testified that he once saw M.K. and F.K. kissing each other using their tongues, and that one night, when he spent the night at L.J.K.’s home, he heard noises and went into the living room where he saw L.J.K. and M.K. on their knees and M.K. was “suck[ing]” L.J.K’s penis. (R. 67.) P.C. testified that he often saw the three children “grab each other’s private spot” (R. 78), and that one time he walked into the living room and saw L.J.K. on top of M.K. and both had their pants down.
Neither M.K. nor F.K. testified at trial; after extensive questioning, the trial court determined that they did not understand what it meant to tell the truth or to take an oath, and the court found them incompetent to testify. However, I.K., after questioning, was deemed qualified to testify by the trial court, and he testified at trial. His testimony contradicted his previous statements to Sherry Shaw and was internally inconsistent. I.K. began by stating that he remembered talking to Shaw, but he denied that he had talked to *859 her about anyone ever touching his or his sisters’ “body parts” (R. 116), or about whether he had touched anyone else’s “body parts.” (R. 119.) I.K. also testified that he had never “licked” anyone’s “eat,” or anyone’s “penis” and that no one had ever “licked” his “penis.” (R. 122-23.) When asked whether he had “ever seen anybody lick another person’s penis,” I.K. nodded his head in the affirmative. (R. 123.) When asked “[w]hose penis did you see get licked?” he responded, “[t]hat big boy like this. He this tall.” (R. 123.) The prosecutor then asked “[w]ho licked his penis?” and I.K. responded, “[m]y daddy know.” (R. 123.) When the prosecutor again asked “[w]ho licked his penis?” I.K. said “[h]e start with J.” (R. 123.) However, when the prosecutor asked a third time, “[w]ho licked his penis?” I.K. said, “It wasn’t nobody” (R. 123), and when the prosecutor then asked “[b]ut you saw somebody lick his penis?” I.K. shook his head in the negative. (R. 124.) In response to further questioning by the prosecutor, I.K. testified that he remembered telling Shaw that he had seen his sisters “lick somebody’s penis” and that he told Shaw that because it was the truth. However, when asked “so who did you tell [Shaw] that you had seen your sisters lick?” I.K. responded: “I didn’t see no girls lick nobody else. My sisters, I didn’t see them lick nobody else.” (R. 125.) Finally, when asked again by the prosecutor whether he had told Shaw that he had seen his sisters “lick somebody,” I.K. denied making such a statement. (R. 125.)
L.J.K. testified on his own behalf; he denied all of the allegations against him. W.K. also testified on L.J.K.’s behalf; she testified that she had never witnessed any sexual contact between L.J.K. and any of his three children. Finally, Kelly Parrish, a child and adolescent counselor at New Horizons in Columbus, Georgia, testified on L.J.K’s behalf. Parrish testified that she had been counseling I.K., M.K., and F.K. for several months;[5] that their school records indicated that they were “well-behaved, well-adjusted children” (R. 205); that she had seen no signs of abuse from the children; and that all three children had denied any abuse.
I.
L.J.K. first contends that the trial court erred in admitting into evidence the testimony of Teresa Robbins and Sherry Shaw regarding the hearsay statements of M.K. and F.K. because, he says, the court failed to comply with § 15-25-32, Ala.Code 1975. Specifically, L.J.K. argues that the court did not make any findings that M.K. and F.K. were unavailable to testify for any of the reasons stated in § 15-25-32(2)a., or that M.K.’s and F.K’s hearsay statements possessed particularized guarantees of trustworthiness as required by § 15-25-32(2)b. Although L.J.K. objected to the admission of the hearsay statements of all three children, he did so on the grounds that § 15-25-30 et seq., Ala.Code 1975, was unconstitutional and that under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the admission of the hearsay statements would violate his right to confront his accusers. See Part II of this opinion. However, he did not allege that the trial court had not complied with § 15-25-32. “The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.” Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). Therefore, this issue is not properly before this Court for review.
*860 II.
L.J.K. next contends that the trial court erred in admitting into evidence the testimony of Robbins and Shaw regarding the hearsay statements of M.K. and F.K. because, he says, admission of the hearsay violated his right to confront and cross-examine his accusers under Crawford v. Washington, supra.[6]
We seriously question whether L.J.K.’s argument in this regard complies with Rule 28(a)(10), Ala.R.App.P., which requires that an argument in an appellate brief contain “the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on.” L.J.K. cites Crawford, supra, and T.P. v. State, 911 So.2d 1117 (Ala.Crim.App.2004), and he makes conclusory statements that the hearsay statements of M.K. and F.K. were testimonial in nature and that their admission violated his right to confrontation; however, he makes no real argument as to how Crawford and T.P. are supportive of his argument. “Merely citing a case with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10).” Hodges v. State, 926 So.2d 1060, 1075 (Ala.Crim.App.2005). Nevertheless, because the question whether L.J.K’s argument complies with Rule 28(a)(10) is a close one, we address his argument.
The record reflects that Robbins was the State’s second witness; Shaw was the State’s fifth witness; and I.K. was the State’s sixth witness. During direct examination, Robbins testified that while she was driving the three children to the Wire-grass Children’s Home, M.K. beginning singing “I suck Daddy’s weenie” over and over. (R. 51.) L.J.K. did not object to this testimony. However, when the prosecutor asked Robbins about her interviews of the children, the following occurred:
“[L.J.K’s counsel]: Your Honor, I’m gonna object at this point. Can we approach and get something on the record?
“THE COURT: Yes, sir.
“(Whereupon, counsel conferred at the bench, out of the hearing of the jury.)
“[L.J.K.’s counsel]: Your Honor, I know there’s a statute that allows a social worker to testify as to what children have said. But I’m going to object to that. I’m going to say that that statute in this State is unconstitutional on its face and as applied. We have a U.S. Supreme Court ruling from about — it was decided on March 8 of this year in the case of Crawford v. Washington [541 U.S. 36 (2004)] wherein in a similar situation not involving children, but involving a domestic violence victim who refused to testify against her husband. And the State — the Court admitted her evidence as being — they said she was unavailable to testify because she had refused. And the U.S. Supreme Court has overturned that case saying that cross-examination is necessary for admission of statements of people who are unavailable. And I would contest that saying what these children said to her not only is hearsay in the classical sense, but in the sense of our statute that allows the social worker to testify as to what children have said; that we have to say that that is now unconstitutional because there was no chance of confrontation or cross-examination at the time any such statements were made. And I would ask that any statements made by the children whether *861 outside of the formal counseling environment or inside the formal counseling environment, whether it be DHR or the Child Advocacy Center be suppressed and not be allowed under the Crawford v. Washington.
“THE COURT: All right.
“[L.J.K’s counsel]: I have a copy if folks would like to see it.
“THE COURT: All right.
“[Prosecutor]: Well, I’m not familiar with the case that he’s citing, but certainly the — what he’s citing is precedent for this situation. Seems to be an entirely different situation where we have a victim of adult age that refuses to testify. One big difference is the three children are here and I anticipate them testifying. So they’re open for cross-examination. And I don’t think that that case even applies to the Alabama law.
“THE COURT: Motion is denied.
“[L.J.K’s counsel]: Thank you, Your Honor.”
(R. 52-55; emphasis added.) After Robbins and Shaw testified about the hearsay statements of M.K. and F.K., the prosecutor called I.K., M.K., and F.K. to testify. The trial court found I.K. to be competent to testify, and he testified at trial; however, after extensive questioning, the trial court determined that M.K. and F.K. were not competent to testify and neither testified. L.J.K. did not renew his objection to the hearsay statements of M.K. and F.K, did not move to exclude the hearsay statements, and did not move for a mistrial when M.K. and F.K. were determined to be incompetent to testify. Instead, he waited until after he was convicted and filed a motion for a new trial, in which he argued that the admission of Shaw’s testimony about the hearsay statements the children made to her violated his right to confront and cross-examine his accusers.[7]
In Crawford, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the admission of testimonial hearsay statements in a criminal trial unless the hearsay declarant is unavailable to testify and the accused has had an opportunity to cross-examine the declarant. 541 U.S. at 68, 124 S.Ct. 1354. However, the Confrontation Clause does not prohibit the admission of testimonial hearsay statements when the hearsay declarant testifies at trial. See Crawford, 541 U.S. at 59 n. 9, 124 S.Ct. 1354 (“The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.”). See also King v. State, 929 So.2d 1032, 1037 (Ala.Crim.App.2005) (holding that the admission of testimonial hearsay statements was proper because the accused’s right to confront and cross-examine his accusers was “fully satisfied” when the declarant of the hearsay statements testified .at trial and was subject to cross-examination).
In this case, the hearsay statements of M.K. and F.K. were testimonial in nature and, thus, fall within the holding of Crawford. See T.P., 911 So.2d at 1123 (holding that hearsay statements of a child-victim given to a DHR social worker and a police officer were testimonial in nature “because the interview was intended to be used as an investigative tool for a potential criminal prosecution, ... [was] similar to a police interrogation and, thus, falls within the definition of ‘testimonial’ contained in Crawford v. Washington”). However, we conclude that L.J.K’s objection to those statements, at the time it was made, was not sufficient to preserve this issue for review.
*862 In response to L.J.K’s objection to the admission of the hearsay statements, the prosecutor represented that he was planning to call all three children to testify and, in fact, he attempted to do so later in the trial. When the prosecutor attempted to call M.K. and F.K. to testify, however, the trial court determined that they were incompetent to testify and did not allow them to testify. At the time of L.J.K’s objection, based on the prosecutor’s representation that he was going to call all three children to testify, admission of the hearsay statements was proper because, as noted, the Confrontation Clause does not bar admission of testimonial hearsay statements when the hearsay declarant testifies. Thus, the trial court’s ruling on L.J.K’s objection was correct when it was made. Only when M.K. and F.K. were later determined to be incompetent to testify and, in fact, did not testify, did the testimonial hearsay statements become inadmissible under the Confrontation Clause. At that time, however, L.J.K. did not renew his objection or move for a mistrial.
“If a fact has been admitted over the opponent’s objection, on condition that another necessary connecting fact be later introduced, and evidence of such connecting fact is not introduced, the opponent must move for the exclusion of that fact admitted conditionally if the trial court is to be put in error.”
II Charles W. Gamble, McElroy’s Alabama Evidence § 426.01(6) (5th ed.1996) (footnote omitted). See also Rule 104(b), Ala.R.Evid. (“When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon the introduction of evidence sufficient to support a finding of the fulfillment of the condition or may admit that evidence subject to the introduction of evidence sufficient to support such a finding.”).
In Cook v. Latimer, 279 Ala. 294, 184 So.2d 807 (1966), the appellant argued that the trial court had erred in admitting evidence regarding the definition of “retrograde amnesia”; in holding that the issue had not been properly preserved for review, the Alabama Supreme Court stated:
“This evidence was offered by appellee on the cross-examination of one of appellant’s medical witnesses.
“The witness was asked, ‘What is retrograde amnesia?’ Plaintiff objected ‘to a definition, ... to the definition of something that’s not at issue in the case as of this point. If counsel on his defense of this case wishes to put retrograde amnesia at issue then it would be appropriate, but as of now it is not an issue in this case.’ The court sustained the objection and then stated: T am going to change that ruling and let you ask him about it in hopes you won’t have to bring him back if you want to make an issue out of it later.’ The question was then answered.
“Obviously, the evidence was admitted conditionally, that is, subject to its relevancy being shown by subsequent evidence. However, no such showing was made; nor did appellant either renew his objection to the evidence or move to exclude it because its relevancy was never shown. Accordingly, the question as to the competency of the evidence cannot be raised on this appeal. See: Lyons v. Taylor, 231 Ala. 600, 604, 166 So. 15 [(1936)]; Alabama Power Co. v. Allen, 218 Ala. 416, 419, 118 So. 662 [(1928)]; Maddox v. Dunklin, 163 Ala. 278, 281-282, 50 So. 277 [(1909)]; Anno.: ‘Necessity and sufficiency of renewal of objection to, or offer of, evidence admitted or excluded conditionally,’ 88 A.L.R.2d 12, 23 (§ II). In Alabama Power Co. v. Allen, supra, approval was *863 given to the following statement of the applicable principle:
“ ‘The rule is well established that, where the trial court admits evidence over objection, on the promise of counsel that he will later make it competent by the introduction of connecting evidence, or where he temporarily sustains or overrules an objection to the introduction of evidence because of his inability to decide the question of its competency at that time, and no further ruling is requested or made, the question as to the competency of the evidence cannot be raised on appeal.’ 48 A.L.R. Note, p. 488.”
279 Ala. at 298, 184 So.2d at 810-11.
In Gable v. Boles, 718 So.2d 68 (Ala.Civ.App.1998), Fletcher Boles and his wife sued Debra Gable, alleging that Gable had fraudulently misrepresented facts concerning the condition of a boat Gable had sold to the Boleses. The trial court entered a judgment in the Boleses’ favor, and Gable appealed. On appeal, Gable argued, among other things, that the trial court had erred in admitting testimony that she had offered to pay for a portion of the repair costs for the boat. In concluding that the issue had not been properly preserved, the Alabama Court of Civil Appeals stated:
“When the Boleses’ lawyer asked Gable whether the parties had discussed a settlement, Gable’s lawyer objected, stating, “We’re getting into offering compromise settlement negotiations and that’s not permissible.’
“ ““ “It is the law of this state that, where there is no doubt that a proffered statement was an offer of compromise and was made in the negotiation of the settlement of a claim or dispute, it is error to admit such statement into evidence. However, the rule does not apply when the statement made is one [admitting] responsibility.” ’ ” ’
“Norfolk Southern R.R. v. Thompson, 679 So.2d 689, 695 (Ala.1996) (quoting Lowery v. Ward, 662 So.2d 224, 226-27 (Ala.1995)) (quoting, in turn, Creighton v. Norris, 512 So.2d 111, 112 (Ala.Civ.App.1987)) (citations omitted).
“The trial court responded to Gable’s objection: ‘I’m going to overrule the objection for right now. I’ll listen to the testimony. Go ahead.’ (Emphasis added [in Gable ].) The court’s ruling was correct because, based on what the trial court knew at the time of the objection, Gable’s offer to settle the controversy could have been admissible if it was inextricably tied to evidence that Gable admitted liability. See generally Lowery v. Ward, supra. After the court overruled her objection, Gable testified about the substance of the parties’ settlement discussions. Those discussions did not include any admission of liability by Gable; they were, therefore, inadmissible. Gable did not, however, renew her objection when the inadmissibility of the evidence became apparent. Thus, she has not preserved any error for our review.
“ “When evidence is admitted upon the condition that its relevance be shown by subsequent evidence, and no such showing is made, it is incumbent on the objecting party to either renew his objection or move to exclude the evidence because its relevancy was never shown.’
“Pugh v. State Farm Fire & Cas. Co., 474 So.2d 629, 631 (Ala.1985).”
718 So.2d at 72. See also Burton v. State, 48 Ala.App. 713, 267 So.2d 503 (1972).
 Similarly, the trial court’s ruling on L.J.K.’s objection was proper at the time it was made because, based on what *864 the trial court knew at the time — that the prosecutor was going to call all three children to testily — the hearsay statements of M.K. and F.K. would have been admissible over L.J.K.’s confrontation objection. Although the trial court in this case did not specifically state that its ruling was conditional, based on L.J.K’s objection and the State’s response, the only legal basis for overruling the objection was the State’s representation that it was going to call all three children to testify, which would have removed the hearsay statements from the scope of the Confrontation Clause and Crawford. See, e.g., Maples v. State, 758 So.2d 1, 50 (Ala.Crim.App.) (“[T]rial judges are presumed to know the law and to follow it.”), aff'd, 758 So.2d 81 (Ala.1999). Therefore, we conclude that the trial court’s ruling was conditioned upon the three children’s testifying. When M.K. and F.K. were determined to be incompetent to testify, however, L.J.K. did not renew his objection, move to exclude the hearsay statements, or move for a mistrial; thus, he failed to preserve this issue for appellate review.[8]
III.
L.J.K. contends that § 15-25-32 is unconstitutional. In his initial brief, L.J.K. argues:
“Due to the denial of appellant’s right to confront and cross-examine [M.K.] and [F.K.] regarding their alleged out-of-court statements to Teresa Robbins and Sherry Shaw, the application of Section 15-25-32 to the specific facts of this case was unconstitutional. Crawford v. Washington, [541] U.S. [36], 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004); T.P. v. State of Alabama, [911 So.2d 1117] (Ala.Crim.App.[2004]).”
(L.J.K.’s brief at p. 18-19.) In his reply brief, L.J.K. states:
“T.P. v. State of Alabama, [911 So.2d 1117] (Ala.Crim.App.[2004]), did not challenge the constitutional validity of § 15-25-32 of the Code of Alabama (1975). This case does. The constitutionality of the above statute was appropriately raised at the trial court level. Clearly, to the extent that § 15-25-32 allows hearsay to be admitted over timely objection, and in contravention of a defendant’s right to confrontation as it was in the instant case, § 15-25-32 cannot be reconciled with Crawford v. Washington, [541] U.S. [36], 124 S.Ct. 1354, 158 L.E.2d 177 (2004).”
(L.J.K.’s reply brief at p. 10.)
This argument fails to comply with Rule 28(a)(10), Ala.R.App.P. Although L.J.K. cites legal authority in support of his claim, he fails to provide any argument whatsoever as to how that authority is relevant to and supportive of his allegation that § 15-25-32 is unconstitutional. As noted above, “[m]erely citing a case with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10).” Hodges v. State, 926 So.2d at 1075. See also Water Works & Sewer Bd. of Selma v. Randolph, *865 833 So.2d 604, 608 (Ala.2002) (opinion on application for rehearing) (“Merely quoting a statute and emphasizing certain parts with bold type does not constitute a properly stated and supported contention.”), and Spradlin v. Spradlin, 601 So.2d 76, 78-79 (Ala.1992) (holding that citation to a single case with no argument as to how that case supports the appellant’s contention on appeal was insufficient to satisfy Rule 28(a)(5) (now Rule 28(a)(10)), Ala.R.App.P.).
Therefore, because L.J.K’s argument fails to comply with Rule 28(a)(10), it is deemed to be waived, and we will not consider it.
IY.
L.J.K. contends that without the hearsay statements of M.K. and F.K. the evidence was insufficient to sustain his convictions. In his initial brief, he argues:
“As noted above, without the hearsay testimony of Teresa Robbins and Sherry Shaw, the State’s case against [L.J.K.] fails. The only remaining evidence against [L.J.K.] was the very limited testimony of [D.C.] and [P.C.]. [D.C. and P.C.] provided testimony with regard to only one of the three alleged victims, [M.K.]. As pointed out in [L.J.K.’s] affidavit with supporting documents (C. 263-270), [L.J.K.] was in jail on an unrelated domestic violence charge at the exact time of the one occasion that [P.C.] testified he had seen [L.J.K.] in an inappropriate act with [M.K.]. Both [P.C. and D.C.] had expressed bias against [L.J.K.] in the past by referring to him as a ‘nigger,’ both had been banned from [L.J.K’s] household, and the Daleville Police had been contacted on two different occasions about [D.C. and P.C.]. (C. 263)”
(L.J.K’s brief at pp. 19-20.) L.J.K. cites no legal authority in his argument. Although in his reply brief L.J.K. cites T.P. v. State, he does so only to distinguish that case and argue that admission of the hearsay statements in his case was not harmless error; that citation is not offered in support of his challenge to the sufficiency of the evidence. “[W]e are not required to consider matters on appeal unless they are presented and argued in brief with citations to relevant legal authority.” Zasadil v. City of Montgomery, 594 So.2d 231, 231 (Ala.Crim.App.1991). Therefore, L.J.K. has failed to comply with Rule 28(a)(10), Ala.R.App.P., and this argument is deemed to be waived. See, e.g., Beckworth v. State, [Ms. CR-02-1077, August 26, 2005] — So.2d - (Ala.Crim.App.2005), and Neville v. State, 832 So.2d 669 (Ala.Crim.App.2001) (both holding that an argument challenging the sufficiency of the evidence that does not include citation to legal authority fails to comply with Rule 28, Ala. R.App.P.).
Moreover, even if this argument were not waived, it is moot under the facts in this case. As noted above, L.J.K.’s objection to the admission of the hearsay statements was properly overruled when it was made, and he did not renew his objection in a timely fashion when the statements became inadmissible upon the trial court’s determination that M.K. and F.K. were incompetent to testify; therefore, the hearsay statements were legal evidence. See, e.g., Watson v. State, 398 So.2d 320, 325 (Ala.Crim.App.1980) (noting that hearsay testimony becomes legal evidence if it is admitted without a proper objection). L.J.K. does not argue that the evidence, including the children’s hearsay statements, was insufficient to sustain his convictions; his only argument is that without the hearsay statements the evidence was insufficient to sustain his convictions. However, because the hearsay statements were admitted without a proper objection, *866 they were legal evidence; therefore, his argument regarding the sufficiency of the evidence without the hearsay statements is moot.
V.
L.J.K. contends that he is entitled to a new trial because, he says, the State failed to disclose a tape recording of a statement he made to police. L.J.K’s entire argument in his initial brief regarding this claim is as follows:
“As part of his pretrial preparation, trial counsel filed a written request for the pre-arrest interview of [L.J.K] by the Daleville Police Department (C. 21-24) as well as an oral request immediately prior to trial (R. 18-20). The requests were granted. (R. 18-20). However, the State denied the existence of the audiotaped interview. (R. 18-20) After trial, the tape was discovered by appellate counsel. (C. 278-279) The failure of the State to timely produce this tape materially prejudiced the trial counsel’s ability to properly prepare [L.J.K.’s] case for trial. (C. 278-279).”
(L.J.K’s brief at p. 20.) L.J.K. cites no legal authority in support of his argument; therefore, he has failed to comply with Rule 28(a)(10), Ala.R.App.P. In addition, although he cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Freeman v. State, 722 So.2d 806 (Ala.Crim.App.1998), in his reply brief, those citations are not offered in support of his argument, but in rebuttal to the State’s argument, which interpreted his claim as a Brady claim. See State’s brief at p. 27 (“[L. J.K’s] argument is apparently based on the United States Supreme Court’s decision in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).”). In his reply brief, he states:
“The State’s brief cites Freeman v. State, 722 So.2d 806, 810 (Ala.Crim.App.1998), in support of their contention that no Brady v. Maryland, 373 U.S. 83, 87 (1963), violation occurred. Freeman is irrelevant to this case.”
(L.J.K’s reply brief at p. 15.) The remainder of his reply argument consists of distinguishing Freeman. Because L.J.K.’s only citation to legal authority is in rebuttal to the State’s argument and not in support of his own argument, we find that L.J.K. has failed to comply with Rule 28(a)(10), Ala.R.App.P.
Moreover, even assuming that L.J.K.’s reference in his reply brief to Brady and Freeman could be said to comply with the requirement in Rule 28(a)(10) that an appellant cite authority in support of his or her argument, because L.J.K.’s argument regarding this issue in his initial brief failed to comply with Rule 28(a)(10), he is, in effect, raising the issue for the first time in his reply brief.
In Brown v. St. Vincent’s Hosp., 899 So.2d 227 (Ala.2004), the issue presented on appeal was whether St. Vincent’s Hospital could be held vicariously liable for an obstetrician’s alleged negligence and wantonness. The appellant’s initial brief on the issue complied with Rule 28(a)(10), Ala. R.App.P., but relied solely on authority from foreign jurisdictions. In his reply brief, however, the appellant, for the first time, cited Alabama law. The Alabama Supreme Court questioned the propriety of citing Alabama law for the first time in a reply brief, but nonetheless reached the issue. The Court explained:
“In his principal brief to this Court, Wesley argues, as he did before the trial court, that St. Vincent’s ‘can be held vicariously liable under the guiding principle of apparent authority based upon Section 429 of the Restatement (Second) of Torts (1965)’ and the principle of agency by estoppel, which ‘is based upon Restatement (Second) of Agency § 267 *867 (1958).’ Wesley cites and discusses various decisions from other jurisdictions in support of his argument that his claim against St. Vincent’s should be allowed to go forward under the liability concepts expressed by the sections of the Restatements he cites, but he cites no decisions from either this Court or the Court of Civil Appeals in this section of his principal brief. In the corresponding section of his reply brief, he cites John Deere Construction Equipment Co. v. England, 883 So.2d 173 (Ala.2003), but without discussing its holding other than to state that ‘[u]nder the analysis recently used by this Court in John Deere, the plaintiff has presented a factual issue on agency’ (Wesley’s reply brief, p. 4); he also cites Malmberg v. American Honda Motor Co., 644 So.2d 888 (Ala.1994), but only as support for his statement that ‘[t]his Court applies apparent agency to the manufacturer-dealer relationship.’
“Arguably, by eschewing any consideration of Alabama law on point in his principal brief, and relying exclusively on foreign caselaw and the two sections from the two Restatements, Wesley has ‘put all his eggs in one basket’ and has waived his right to seek a reversal based upon principles of Alabama law. Even were his passing references to John Deere and Malmberg sufficient under Rule 28, Ala.R.App.P., to warrant consideration, there is the well-established principle of appellate review that we will not consider an issue not raised in an appellant’s initial brief, but raised only in its reply brief. Birmingham Bd. of Educ. v. Boyd, 877 So.2d 592 (Ala.2003); Sanders v. Smitherman, 776 So.2d 68, 73 (Ala.2000); C & S Family Credit of Alabama, Inc. v. McNairy, 613 So.2d 1232, 1232 (Ala.1992). Nonetheless, because it is a close question as to whether Wesley’s acknowledgment of Alabama caselaw on point only in his reply brief represents a new ‘issue,’ as opposed to simply additional argument in support of an issue properly raised in the initial brief, we will exercise our discretion and consider relevant Alabama caselaw.”
899 So.2d at 234-35.
However, in Kyser v. Harrison, 908 So.2d 914 (Ala.2005), the Alabama Supreme Court declined to address an issue on appeal when the appellants failed to comply with Rule 28(a)(10) in their initial brief by failing to cite any authority even though the appellants cited authority in their reply brief. The Court explained:
“The Kysers argue that the trial court erred in refusing to consider their written response to Harrison’s motion to exclude. In their initial appellate brief, the Kysers cite no legal authority in support of that argument. In Spradlin v. Birmingham Airport Authority, 613 So.2d 347, 348 (Ala.1993), this Court stated:
“ ‘ “Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment as to those issues, for it is neither this Court’s duty nor its function to perform all the legal research for an appellant. Rule 28(a)[(10)], Ala.R.App. P.; Henderson v. Alabama A & M Univ., 483 So.2d 392 (Ala.1986).” Sea Calm Shipping Co., S. A. v. Cooks, 565 So.2d 212, 216 (Ala.1990).’
“In their reply brief, the Kysers cite Rule 6(d), Ala.R.Civ.P., which provides:
“ ‘A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five (5) days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause *868 shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in Rule 59(c), opposing affidavits may be served not later than one (1) day before the hearing, unless the court permits them to be served at some other time.’
“We note ‘the well-established principle of appellate review that we will not consider an issue not raised in an appellant’s initial brief, but raised only in its reply brief.’ Brown v. St. Vincent’s Hosp., 899 So.2d 227, 234 (Ala.2004). Whether Rule 6(d) was violated in this case is an issue the Kysers raise for the first time in their reply brief, to which Harrison has not had the opportunity to respond.”
908 So.2d at 917.
In this case, like Kyser, L.J.K’s initial brief fails to comply with Rule 28(a)(10) because he cited no legal authority in support of his argument that the State’s alleged failure to disclose a tape recording of a statement he made to police entitles him to a new trial. Because L.J.K. fails to cite any authority in support of his argument, he is deemed to have waived the argument, and his citation to authority in his reply brief is the equivalent of his raising the issue for the first time in his reply brief. It is well settled that “an appellant may not raise a new issue for the first time in a reply brief.” Woods v. State, 845 So.2d 843, 846 (Ala.Crim.App.2002). “As a general rule, issues raised for the first time in a reply brief are not properly subject to appellate review.” Ex parte Powell, 796 So.2d 434, 436 (Ala.2001).
Therefore, because L.J.K.’s initial brief regarding this issue fails to comply with Rule 28(a)(10), AIa.R.App.P., and, even assuming that his reply brief complied with Rule 28(a)(10), because an appellant may not raise a new issue for the first time in a reply brief, this argument is not properly before this Court for review.
VI.
L.J.K. contends that his trial counsel was ineffective. In his initial brief, L.J.K’s entire argument in this regard is as follows:
“[L.J.K.] is entitled to reasonably effective representation at each stage of his proceedings. The record is replete with correspondence from [L.J.K.] as well as pro se motions setting forth trial counsel’s deficiencies. Pages 2 and 3 of [L.J.K.’s] affidavit of December 14, 2004 (C 260-262) speak for themselves.”
(L.J.K’s brief at p. 21.) “Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed.” Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). L.J.K. cites no legal authority in support of his argument. He also fails to provide an adequate recitation of the facts relied upon in support of his argument; merely referring to the record without setting forth the facts in support of an argument is not sufficient to comply with Rule 28(a)(10), Ala.R.App.P. Moreover, although L.J.K. cites Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in his reply brief, and lists four specific allegations of ineffective assistance of counsel, because his initial brief fails to comply with Rule 28(a)(10), and he did not include those specific allegations in his initial brief, we consider them to have been raised for the first time in his reply brief. See Part V of this opinion. As noted above, “an appellant may not raise a new issue for the first time in a reply brief.” Woods v. State, 845 So.2d at 846. See also James v. State, 788 So.2d 185, 192 n. 2 *869 (Ala.Crim.App.2000) (noting that an appellant may not raise for the first time in his reply brief specific allegations of ineffective assistance of counsel that were not raised in his initial appellate brief).
Therefore, because the argument in L.J.K’s initial brief fails to comply with Rule 28(a)(10) and because he raises specific allegations of ineffective assistance for the first time in his reply brief, there is nothing for this Court to review with respect to this claim.
VII.
Finally, L.J.K. contends that he was entitled to an evidentiary hearing on his motion for a new trial. In his initial brief, L.J.K.’s entire argument in this regard is as follows:
“[L.J.K.] was denied the right to an evidentiary hearing on his motion for new trial due to the trial court’s misplaced reliance on [Ex parte] Jackson[, 598 So.2d 895, 897 (Ala.1992), overruled on other grounds, Ex parte Ingram, 675 So.2d 863, 865 (Ala.1996)]. Pursuant to Underwood v. State, 879 So.2d 611 (Ala.Crim.App.2003); Edgar v. State, 646 So.2d 683 (Ala.1994); as well as Ex parte Boatwright, 471 So.2d 1257 (Ala.1985), [L.J.K.’s] motions for new trial entitle him to an evidentiary hearing. [L.J.K.’s] uncontested affidavits (C. 260-270) clearly establish that [L.J.K’s] request for an evidentiary hearing is meritorious.”
(L.J.K’s brief at pp. 21-22.) Although L.J.K. cites legal authority in support of this claim, he fails to provide any argument as to how the authority he cites supports his claim that he was entitled to an evidentiary hearing on his motion for a new trial. As noted above, “[m]erely citing a case with no discussion as to its relevance is insufficient to satisfy Rule 28(a)(10).” Hodges v. State, 926 So.2d at 1075. In addition, L.J.K. fails to provide an adequate recitation of the facts relied upon in support of his argument; he merely refers to the record without setting forth any facts regarding why he believes he was entitled to an evidentiary hearing on his motion for a new trial. Moreover, although L.J.K’s argument in his reply brief includes much more detail and argument, because his initial brief fails to comply with Rule 28(a)(10), we consider this issue to be raised for the first time in his reply brief. See Part V of this opinion. “[N]ew issues may not be raised for the first time in a reply brief.” McCall v. State, 565 So.2d 1163, 1167 (Ala.Crim.App.1990). Therefore, this issue is not properly before this Court for review.
VIII.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and WISE, J., concur. SHAW, J., concurs specially, with opinion. BASCHAB, J., concurs in the result, with opinion, which COBB, J., joins.

. As the time of trial, I.K. and M.K. were six years old and F.K. was eight years old.

. L.J.K. and W.K. married in 2003.

. He was later convicted of that crime.

.L.J.K. testified at trial that the domestic-violence incident with J.D. began because J.D. had assaulted M.K. and F.K., and L.J.K. attempted to stop the assault. Apparently, this was the reason L.J.K. requested that his children be removed from the home.

. At some point in time not clearly identified in the record, the children were removed from foster care and placed in the custody of their paternal grandparents in Georgia.

. L.J.K. does not challenge on appeal the admissibility of the hearsay statements of I.K.

. L.J.K. did not challenge Robbins’s testimony in his motion for a new trial.

. We note that L.J.K. did reassert his objection to the hearsay statements in his motion for a new trial. However, " '[t]he grounds urged for a new trial must ordinarily be preserved at trial by timely and sufficient objections.’ ” Hamrick v. State, 548 So.2d 652, 655 (Ala.Crim.App.1989) (quoting Smith v. State, 393 So.2d 529, 532 (Ala.Crim.App.1981)). " '[A] motion for a new trial or a motion for a judgment of acquittal is not sufficient to preserve the issue where no timely objection was made at the time the evidence was offered and admitted.’ ” Greenhill v. State, 746 So.2d 1064, 1068-69 (Ala.Crim.App.1999) (quoting Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989)). Because L.J.K. did not renew his objection to the admission of the hearsay statements at the time those statements became inadmissible, raising the objection in his motion for a new trial was not timely and did not preserve the issue for review.